1   ROB BONTA
    Attorney General of California
2   MARK BECKINGTON
    Supervising Deputy Attorney General
3   KEITH L. WURSTER
    Deputy Attorney General
4   State Bar No. 198918
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 210-7907
     Fax:  (916) 324-8835
7    E-mail:  Keith.Wurster@doj.ca.gov
    *Attorneys for Defendant Rob Bonta as Attorney*
8   *General for the State of California*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13 **PROGRESSIVE DEMOCRATS FOR SOCIAL JUSTICE, KRISTA HENNEMAN, CARLIE WARE,** | 21-cv-3875 |
| Plaintiffs, | **DEFENDANT ROB BONTA'S OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |
| v. | |
| **ROB BONTA, in his official capacity as Attorney General of the State of California,** | Date:        June 17, 2021 |
| Defendants. | Time:        2:00 P.M. |
| | Dept:        2 |
| | Judge:       The Honorable Haywood S. Gilliam, Jr. |
| | Trial Date:  Not Set |
| | Action Filed: May 24, 2021 |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 2

Legal Standard ............................................................................................................... 3

Argument ........................................................................................................................ 4

        A.     Plaintiffs Cannot Demonstrate a Clear Likelihood of Prevailing on the Merits of their Claim that Section 3205 Violates their First Amendment Rights .................................................................................. 4

                1.    Under the Pickering Test California's interest in maintaining the public workplace outweighs Plaintiffs' interest in soliciting political donations from co-workers .............................. 5

                2.    Even Under Plaintiff's asserted standard California's important interest is closely drawn to justifiably prohibit solicitation of political contributions in the public workplace…………………………………………………………… 9

        B.     Plaintiffs Cannot Demonstrate That They Are Clearly Likely to Prevail on their Claim That Section 3205 Violates the Equal Protection Clause ....... 13

        C.     The Remaining Equitable Factors Weigh Heavily Against Issuance of a Temporary Restraining Order …………………………………………....16

                1.    Plaintiffs have not, and will not, suffer irreparable harm ……….16

                2.    The balance of equities and the public interest favor denial of the requested temporary restraining order ……..…………………….17

Conclusion ..................................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Bethel School Dist. No. 403 v. Fraser*
    *478 U.S. 675 (1986)* ........................................................................... 8

*Broadrick v. Okla.*
    413 U.S. 601 (1973).................................................................... 7, 8, 13

*Buckley v. Valeo*
    424 U.S. 1 (1973) .................................................................... 10, 11

*California by & through Becerra v. Azar*
    950 F.3d 1067 (9th Cir. 2020).......................................................... 16

*Citizens United v. FEC*
    558 U.S. 310 (2010) ...................................................................... 8

*Citizens United v. FEC*
    558 US 310 (2010) ....................................................................... 10

*Civil Service Comm'n v. Letter Carriers*
    *413 U.S. 548 (1973)* ............................................................... 8, 9, 10

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014).......................................................... 18

*Fangman*, 634 F.Supp.2d at 876-877 ...................................................... 11

*Fangman v. City of Cincinnati*
    634 F.Supp.2d 872 (S.D. Ohio 2008) ........................................... 8, 9, 15

*Garcetti v. Ceballos*
    547 U.S. 410 (2006)................................................................. 5,6, 8

*Garcia v. Google*
    786 F.3d 733 (9th Cir. 2015)........................................................ 4, 12

*Gresham v. Picker*
    705 F. App'x 554 (9th Cir. 2017) ...................................................... 17

*Harwin v. Goleta Water Dist.*
    953 F.2d 488 (9th Cir. 1991)........................................................... 14

ii

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3    *Jones v. North Carolina Prisoners' Labor Union, Inc.*
4         *433 U.S. 119 (1977)* ............................................................................ 8

5    *Lane v. Franks*
          134 S. Ct. 2369 (2014) .......................................................................... 5
6
7    *Lopez v. Brewer*
          680 F.3d 1068 (9th Cir. 2012) ............................................................. 4

8    *Mazurek v. Armstrong*, 520 U.S.968 (1997) ............................................. 4

9    *McCutcheon v. FEC*
10        572 U.S. 185 (2014) ..................................................................... 10, 11

11   *McGowan v. Maryland*
          366 U.S. 420 (1961) ............................................................................ 13
12
13   *Munaf v. Geren*
          553 U.S. 674, 690 (2008) ...................................................................... 3

14   *Nken v. Holder*
15        556 U.S. 418 (2009) ............................................................................ 17

16   *Parker v. Levy*
          *417 U.S. 733 (1974)* ............................................................................ 8
17
18   *Phillips v. City of Dallas*
          781 F.3d 772 (5th Cir. 2015) ................................................................ 8

19   *Pickering v Board of Education*
20        391 U.S. 563 (1968) .............................................................................. 5

21   *Reno Air Racing Ass'n, Inc. v. McCord*
          452 F.3d 1126 (9th Cir. 2006) ............................................................. 4
22
23   *Riddle v. Hickenlooper*
          742 F.3d 922 (10th Cir. 2014) ............................................................ 15

24   *Russel v. Burris*
          146 F.3d 563 (8th Cir. 1998) ............................................................... 15
25

26   *Stanley v. Univ. of So. Cal.*
          13 F.3d 1313 (9th Cir. 1994) ............................................................ 4, 5

27   *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*
28        240 F.3d 832 (9th Cir. 2001) ................................................................ 3

Defendant Rob Bonta's Opposition to Ex Parte Application for Temporary Restraining Order and Order to Show
Cause (21-cv-3875)

## TABLE OF AUTHORITIES
### (continued)

Page

*Tanner Motor Livery, Ltd. v. Avis, Inc.*
    316 F.2d 804 (9th Cir. 1963) .................................................. 4

*Thompson v. Dewine*
    959 F.3d 804 (6th Cir. 2020) ................................................ 18

*United Public Workers v Mitchell*
    *330 U.S. 75 (1945)* ............................................................ 6

*United States Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*
    *413 U.S. 548 (1973)* ................................................. 6, 7, 8, 9

*Washington v. Trump*
    847 F.3d 1151 (9th Cir. 2017) ............................................... 3

*Willaims-Yulee v. Fla. Bar*
    575 U.S. 433 (2015) ................................................ 11, 12, 14

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ......................................................... 3, 18

**STATUTES**

California Government Code
    § 3205 ...................................................................... *passim*
    § 3205(a) ...................................................................... 5
    § 3205 (c) .................................................................... 17

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 65 ......................................................................... 3
    Rule 65(b)(1) .................................................................. 3

**OTHER AUTHORITIES**

Cal. Bill Analysis, S.B. 1308, 1995-1996 Session (July 12, 1995) ................. 3

John E. Nowak & Ronald D. Rotunda, Constitutional Law § 16.52(a) (8th
    ed.2010) ...................................................................... 10

iv

Defendant Rob Bonta's Opposition to Ex Parte Application for Temporary Restraining Order and Order to Show
Cause (21-cv-3875)

**INTRODUCTION**

Plaintiffs Krista Henneman ("Henneman") and Carlie Ware ("Ware"), are founding members and officers of Plaintiff Progressive Democrats for Social Justice ("the Political Club"), which is a partisan political club chartered by the Santa Clara County Democratic Party. Ware and Henneman are Public Defenders with the Santa Clara County Public Defenders' Office. In the present motion they are seeking an Ex Parte Temporary Restraining Order prohibiting the California Attorney General, Rob Bonta (in his official capacity as the Attorney General of the State of California) (the "AG"), from enforcing California Government Code section 3205 ("Section 3205") against Plaintiffs and requiring the AG to instruct the Santa Clara County District Attorney not to enforce Section 3205 against Plaintiffs. In addition, Plaintiffs request an Order to Show Cause why a Preliminary Injunction should not issue directing the AG to continue to follow the terms of the TRO.

Contrary to Plaintiffs' assertions California has a significant and important long-standing interest in regulating the conduct that Plaintiffs seek to undertake in their workplace. California enacted a legitimate and narrow workplace restriction to prohibit very limited political conduct in local area agencies. It did so to provide a universal rule for all such agencies that would prevent employees of cities, counties, and other local area agencies from soliciting political contributions from co-workers. Allowing such solicitations could lead coercion out of fear that employment or advancement could be in jeopardy, or that one would be ostracized, if a contribution was not made. The limitation imposes little burden on Plaintiffs, and compared to the importance of maintaining an efficient and coercion-free workplace the limitation is justified.

Plaintiffs cannot meet their heavy burden to show that they will clearly succeed on the merits by demonstrating that Section 3205 unconstitutional, Moreover, they do not and will not suffer an irreparable injury absent injunctive relief, the equities tip in favor of maintaining the status quo, and continuing to enforce Section 3205 to promote anti-corruption and confidence that local agencies will operate in a non-partisan manner, is in the public interest.

1

Plaintiffs' requested TRO would not only upset the status quo, it would also require the AG to stay enforcement of a long standing anti-corruption statute that regulates conduct in county, city and local agencies, promotes the efficient operation of local government, and prevents the creation of a coercive and partisan environment for employees in those agencies. In addition, should the requested TRO be granted it will undermine the public's confidence in local government, but potentially harken the return of political corruption that plagued such agencies in the early part of the last century.

## BACKGROUND

The anti-corruption statute at issue, California Government Code Section 3205 ("Section 3205"), was first enacted as part of a statutory framework that targeted corruption in the ranks of civil service in both state and local governments beginning as early as 1913. This framework was modified and amended over time as the law addressing political corruption and the free exercise of political speech and association evolved over time. As part of this evolution Congress passed the Hatch Act in 1940 as a significant effort to curb corruption and partisan influence and control over federal civil service. Many states, cities, and municipalities, like California, also enacted or modified similar provisions in the 1930s and 1940s to address long standing practices and concerns over undue political influence and corruption in their respective civil service ranks. Section 3205 and the related provisions in the California Government Code are the current iteration of part of California's attempt to avoid the negative and harmful influence that partisan politics can have on the operation of state and local agencies.

Amendments to the state framework were made in 1963 to address, among other things, concerns that the limitations on political activity within the civil service ranks varied widely in the county, city, and local agencies. Some local areas, like Los Angeles County permitted almost no political activity, while others like the City of Los Angeles had no limits on the political activity of their civil employees. The resulting amendments were designed to provide some uniformity and balance to the political freedoms and restrictions placed on civil servants throughout the state. Amendments occurred in 1976, 1983, 1995 (when the current version of Section 3205 was last amended), and 1997; these amendments took into account the regulatory

2

efforts of the state in policing its employees, developments in local government regulations and further developments in freedom of political exercise. When amending Section 3205 in 1995, the Legislature considered that the amendment was needed to ensure "that neither [governmental] employees nor officers should be coerced into contributions for fear that employment may be in jeopardy if they do not contribute." Cal. Bill Analysis, S.B. 1308, 1995-1996 Session (July 12, 1995).

The relevant language of Section 3205 that was adopted in 1995 provides:

"(a) An officer or employee of a local agency shall not, directly or indirectly, solicit a political contribution from an officer or employee of that agency, or from a person on an employment list of that agency, with knowledge that the person from whom the contribution is solicited is an officer or employee of that agency." Cal. Gov't. Code § 3205(a).

Plaintiffs assert that they wish to exercise political activity which is currently prohibited by Section 3205. Specifically, Plaintiffs Ware and Henneman would like to begin campaigning for and supporting a colleague who will intends to run for the office of Santa Clara County District Attorney. As part of their activity to support this future candidate, they want to solicit campaign contributions from their colleagues in the Santa Clara County Public Defender's Office.  This later activity is what Plaintiffs fear would subject them to prosecution for a misdemeanor.

## LEGAL STANDARD

"[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). A temporary restraining order, like a preliminary injunction, is 'an extraordinary remedy never awarded as of right.'" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 690 (2008)). One may issue only if the moving party "clearly show[s]" that, absent injunctive relief, he will suffer "immediate and irreparable injury, loss, or damage." *Id.*; *see also* Fed. R. Civ. P. 65. To satisfy that burden, the movant must establish that it will likely (i) succeed on the merits and (ii) suffer irreparable harm without preliminary injunctive

3

relief, (iii) that the equities tip in its favor, and (iv) that an injunction would further the public interest. *Winter*, 555 U.S. at 20.

TROs are emergency measures, intended to preserve the status quo pending a full hearing on the injunctive relief requested, and the irreparable harm must therefore be immediate. Fed. R. Civ. Proc. 65(b)(1); *see Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Injunctive relief "is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that temporary restraining orders and preliminary injunctions are subject to "substantially identical" analysis).

Significantly, preliminary injunctions that would alter the status quo are "particularly disfavored." *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation omitted). "It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo *ante litem* pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). Plaintiffs seeking relief changing the status quo must satisfy a "doubly demanding" burden of "establishing that the law and facts *clearly favor* [their] position.'" *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015).

## ARGUMENT

### A.    Plaintiffs' Cannot Demonstrate a Clear Likelihood of Prevailing on the Merits of Their Claim that Section 3205 Violates their First Amendment Rights

Plaintiffs' *Ex Parte* Application for a TRO and Order to Show Cause should be denied because they fail to satisfy the four equitable factors that the Court must weigh in determining whether to grant such extraordinary relief. Notably, Plaintiffs' application is subject to a heightened standard because they seek a mandatory injunction by requesting an injunction against the status quo, *i.e.,* enforcement of a long standing statute — Section 3205, the anti-corruption standard established by the Legislature prohibiting certain limited political conduct by county,

4

Defendant Rob Bonta's Opposition to Ex Parte Application for Temporary Restraining Order and Order to Show Cause (21-cv-3875)

city and local agency employees. In contrast to prohibitory injunctions designed to preserve the status quo during litigation, a "mandatory" injunctions goes "well beyond simply maintaining the status quo *pendent lite* [and] is disfavored." *Stanley*, 13 F.3d at 1320 (quotation omitted). In addition, Plaintiffs are simply unable to satisfying the requisite equitable factors, and demonstrate that the law and facts *clearly favor* [their] position.'" *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Plaintiffs cannot make this demanding showing.

### 1.   Under the Pickering Test California's interest in maintaining the public workplace outweighs Plaintiffs' interest in soliciting political donations from co-workers

In this matter the Court is being asked to consider the constitutional protections accorded to public employee speech. Plaintiffs and Ware and Henneman are employees of the County of Santa Clara. Ware Declaration, ¶ 2; Henneman Declaration, ¶ 2. Plaintiffs allege that their First Amendment Rights are being impermissible infringed by Section 3205, which applies to county employees to prohibit them from soliciting political donations from county co-workers. The applicable review is to apply the test established in *Pickering v Board of Education,* 391 U.S. 563, 568 (1968). In applying this test the Court must first determine whether the speech at issue was that of the employee as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). If this is the case, then the Court must balance the First Amendment claims of the Plaintiff versus the justification the government has for treating the employee differently from any member of the public. *Id.* "The government entity has broader discretion to restrict speech when it acts in its role as employer" when as here, "the restrictions it imposes [are] directed at speech that has some potential to affect the entity's operations." *Id.*

Plaintiffs assert the speech they want to exercise is political speech as a citizen, not as an employee. Ware Declaration, ¶¶9-10, 13 and 16; Henneman Declaration, ¶¶ 6, 10, and 13. This would appear to satisfy the first part of the required inquiry. *Lane v. Franks,* 134 S. Ct. 2369, 2380 (2014) (holding that "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, …" (citations omitted)). Thus, it appropriate to move on to the balancing the Plaintiffs' First

5

1    Amendment claims against California's interest in the operations of county, city and local entity

2    operations. *Garcetti,* 547 U.S. at 418.

3          In the case at bar, the State of California has an interest in ensuring the integrity of county,

4    city, and local public agencies and preventing not only corruption but the appearance of

5    corruption in their employment and promotion practices or their overall operations. *Garcetti,* 547

6    U.S. at 418. This interest extends into a number of areas that are typically protected by the First

7    Amendment, including management or active participation in political campaigns, and the right

8    of public employees to solicit political contributions. For example, in *United States Civ. Serv.*

9    *Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548 (1973), the Supreme Court upheld § 9 of

10   the Hatch Act which prevents federal employees from taking an active part in political

11   management or in political campaigns. The Court found the government had a significant interest

12   in regulating the conduct and speech of its employees – even into areas that are considered

13   protected speech by the First Amendment. In explaining its reasoning for upholding the

14   restrictions the Court stated:

15        "We unhesitatingly reaffirm the *Mitchell* holding that Congress had, and has, the

16        power to prevent Mr. Poole and others like him from holding a party office,

17        working at the polls, and acting as party paymaster for other party workers.  An Act

18        of Congress going no farther would in our view unquestionably be valid.  So would

19        it be if, in plain and understandable language, the statute forbade activities such as

20        organizing a political party or club; *actively participating in fund-raising activities*

21        *for a partisan candidate* or political party; becoming a partisan candidate for, or

22        campaigning for, an elective public office; actively managing the campaign of a

23        partisan candidate for public office; initiating or circulating a partisan nominating

24        petition or soliciting votes for a partisan candidate for public office; or serving  as a

25        delegate, alternate or proxy to a political party convention. Our judgment is that

26        neither the *First Amendment* nor any other provision of the Constitution invalidates

27        a law barring this kind of partisan political conduct by federal employees." *Nat'l*

28        *Ass'n of Letter Carriers,* 413 U.S. at 556 (emphasis added).

The Court went on to say "it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service, and that the political influence of federal employees on others and on the electoral process should be limited." *Id. at 557*. The same reasoning applies here, the state, like the federal government, has an interest in ensuring that civil service agencies within its jurisdiction operate based on meritorious service rather than political service. The restriction imposed on Plaintiffs by Section 3205 is far less than the restrictions imposed in *Letter Carriers.* And, one of the restrictions upheld in *Letter Carriers* included a prohibition on "active fund raising activities by a partisan candidate." *Id.* at 556. Thus it is apparent that California's interest maintaining the prohibition of Section 3205 to maintain the efficiency of local agency work places outweighs the minor restriction on the ability of Plaintiffs to solicit partisan contributions from co-workers.

Another instructive Supreme Court case is *Broadrick v. Okla.,* 413 U.S. 601 (1973). In *Broadrick*, the Supreme Court upheld the District Court's decision that an Oklahoma civil service statute which established a number of restrictions on "a broad range of political activities and conduct" including that "no employee in the classified service . . . shall, directly or indirectly, solicit, receive, or in any manner be concerned in soliciting or receiving an assessment . . . or contribution for any political organization, candidacy or other political purpose." *Id.* at 604-606. A violation of these provisions resulted in dismissal from employment and possible criminal charges. *Id.* "Appellants' conduct falls squarely within the proscription of section 818, which deals with activities that the State has ample power to regulate, …, and the operation of the statute has been administratively confined to clearly partisan political activity." *Id.* The Court and the parties, in reliance on *Mitchell,* 330 U.S. at 99-103, accepted that Oklahoma had a right to place evenhanded restrictions on partisan political conduct of employees as they could "serve valid and important state interests" including "attracting greater numbers of qualified people by insuring their job security, free from the vicissitudes of the elective process, and by protecting them from 'political extortion'" *Broadrick*, at 606. The Court found that the statue was narrowly tailored to serve an important state interest. Plaintiffs' offending activity included direct solicitation of political contributions from coworkers for the benefit of their superior. *Id.* at 610. Thus the statute

7

in question, one that included a specific non-solicitation provision similar to the case at bar as well as much broader restrictions on political activity, was upheld as a valid constitutional restraint on the speech and activity of the state employees. California, much like Oklahoma, has an important interest, indeed a compelling interest, in maintaining a highly qualified staff within its civil service ranks, and ensuring that civil service employees within its state are free from "the vicissitudes of the elective process" and by protected from "political extortion" *Id.* at 606.

In *Phillips v. City of Dallas,* 781 F.3d 772, 783 (5th Cir. 2015), a provision that required city employees to forfeit their city employment if they ran for elected office in a county overlapping the city of Dallas was upheld based on the interest of the City in effectively managing its operations. The Court stated that "*Letter Carriers* and *Broadrick* remain good law, …this circuit has time and time again favored governments against First Amendment challenges to laws more far-reaching than the City's here [description of law]" because the "governmental interest in fair and effective operation of the ... government justifies regulation of partisan political activities of government employees." John E. Nowak & Ronald D. Rotunda, Constitutional Law § 16.52(a) (8th ed.2010)." *Phillips,* 781 F.3d at 783. Again this case supports the conclusion that California's interest in effectively managing its local agency work places outweighs the limitations placed on Plaintiffs' right to solicit political donations from co-workers.

Finally, in *Fangman v. City of Cincinnati*, 634 F.Supp.2d 872, 879 (S.D. Ohio 2008), a district court adopted the reasoning of *Broadrick* and *Letter Carriers* when it found that Cincinnati had a legitimate and important interest in preventing partisan political pressure to donate that could corrupt the city work. *Fangman,* 634 F.Supp.2d at 878. The *Fangman* Court explained:

> "The Little Hatch Act, like the federal Hatch Act and other similar laws, limits the
> *First Amendment* right of public employees to engage in partisan politics in order to
> protect the efficiency and integrity of the public service. This justification is a
> sufficient government interest to justify an encroachment on *First Amendment*
> rights." *Fangman*, 634 F.Supp.2d at 876-877 (internal citations omitted).

1    The Court went on to explain that "the objective of the Little Hatch Act is to prevent the

2    emergence of a political patronage system in Cincinnati city government. In furtherance of that

3    objective, it is unquestionable that the city may limit its employees' participation in local partisan

4    politics without violating the Constitution." *Id.* at 877 (internal citations omitted). The Court

5    found that the language in two of the challenged sections of the charter were overbroad, and on

6    that basis struck down those provisions. The Court, however, upheld the restrictions on partisan

7    campaign activity and the distribution of campaign literature. *Id.* at 880. The court noted that

8    although the specific prohibition on city employees from making political solicitations or

9    contributions in the City Charter was unenforceable, Ohio still had a valid and enforceable statute

10   prohibiting "candidates for elected office from soliciting and/or receiving contributions from

11   public employees." *Id.* at 880, fn 4. This case demonstrates that Section 3205 is supported by an

12   important government interest and that the restriction on Plaintiffs' speech is closely drawn avoid

13   infringing on more speech than necessary to achieve the governmental interest.

14       As all of these cases demonstrate California's interest in to maintain the efficiency of local

15   agency work places outweighs the minor restriction on the ability of Plaintiffs to solicit partisan

16   contributions from co-workers.

17       **2.    Even under Plaintiffs' asserted standard California's important
             interest is closely drawn to justifiably prohibit solicitation of political
18            contributions in the public workplace**

19       Plaintiffs attempt to characterize Section 3205 as a restraint on political contributions, but

20   this mischaracterizes the plain language and the actual reach of the statute. Section 3205 prohibits

21   Plaintiffs from soliciting "a political contribution from an officer or employee" of their public

22   agency. Cal. Gov. Code § 3205(a). This limited prohibition is only on the solicitation of political

23   contributions, *not* on contributions themselves. Thus, officers and employees of local agencies,

24   including those of the Santa Clara County Public Defender's Office, are not restrained in any way

25   by Section 3205 from *making* political contributions to any candidate of their choosing.

26   Accordingly, Plaintiffs' characterization and reliance on case law pertaining to First Amendment

27   protections against restrictions on political contribution and expenditure limits are factually

28

1   distinct from the issues here, are not directly on point, and in many instances apply an

2   inappropriate standard or uses analysis that is not applicable here.

3       Plaintiffs reject that California can justify Section 3205 as a valid workplace restriction and

4   instead assert that proper review of Section 3205 requires the Court to analyze the restriction as a

5   campaign finance restriction. Thus Plaintiffs reference the leading cases in campaign finance

6   restrictions, *Buckley v. Valeo,* 424 U.S. 1, 21-23 (1973) and *McCutcheon v. FEC,* 572 U.S. 185,

7   198 (2014) and acknowledge the application of their holdings in the case at bar. Opening Brief,

8   8:23-9:1; 9: footnote 1. Under this line of cases to review a restriction or limitation on campaign

9   contributions, the infringement on the First Amendment rights in such cases can be sustained if

10  the State demonstrates a sufficiently important interest and employs means closely drawn to avoid

11  unnecessary abridgment of associational freedoms." *Buckley,* 424 U.S. at 30. This standard is less

12  stringent than strict scrutiny and its application is justified because a curtailment on the right to

13  contribute is only a marginal restriction on speech and association. *Buckley,* 424 U.S. 21-23;

14  *McCutcheon v. FEC,* 572 U.S. 185, 198 (2014). That is certainly the case with Section 3205 – it

15  only limits the ability of local agency employees to solicit political contributions from their

16  colleagues. All other forms of political expression are permitted. Even if this standard were

17  applied, which Defendant contends it does not due to the application of the *Pickering* test

18  discussed previously, Section 3205 would survive Plaintiffs' constitutional challenge, as

19  California has a sufficiently important interest

20      While political activity and political speech are provided First Amendment protection – that

21  protection is not absolute. Both Congress and the States have the recognized power to enact

22  legislation and regulations that may curtail otherwise protected speech in certain locations, times,

23  and circumstances if there is a significantly important interest in curtailing the otherwise

24  protected speech. *See, e.g. Buckley,* 424 U.S. at 67; *McCutcheon,* 570 U.S. at 191. The Supreme

25  Court has recognized that political speech can be regulated in order to prevent corruption or the

26  appearance of corruption in certain contexts. *McCutcheon,* 572 U.S. at 191-192; *see also, Citizens*

27  *United v. FEC,* 558 US 310, 357-360 (2010) (discussing *Buckley,* 424 U.S. at 3, and its rationale

28

10

1 for upholding restrictions on campaign contributions because the restrictions served a legitimate

2 governmental interest in combating both corruption and the appearance of corruption.)

3       In *Buckley,* the Supreme Court reviewed legislation restricting both campaign expenditures

4 and contributions. The government asserted that it had a legitimate interest in combating

5 corruption and the appearance of corruption in the areas of campaign expenditures and campaign

6 contributions. In reviewing annual expenditure limits (by individuals and groups, candidates,

7 campaigns, and political parties), the Court found that the imposed limitations on expenditures

8 did not serve any substantial government interest in stemming either the reality or the appearance

9 of corruption in the electoral process, but that they did substantially burden First Amendment

10 expression. It was on this ground that these limitations were struck down. *See, Buckley,* 424 U.S.

11 at 57-58. In contrast, the Court found that the limitations imposed on campaign contributions

12 were constitutionally valid because they served a legitimate interest of combating the "appearance

13 of improper influence stemming from the dependence of candidates on large campaign

14 contributions." *Buckley* at 58. The Court also importantly held that the ceiling established "served

15 the basic governmental interest in safeguarding the integrity of the electoral process without

16 directly impinging upon the rights of individual citizens and candidates to engage in political

17 debate and discussion. *Id.*

18       A directly on pint that evaluated the imposition of a limitation on political solicitation and

19 one that bears many factual similarities to the case at bar is *Willaims-Yulee v. Fla. Bar*, 575 U.S.

20 433 (2015). In *Williams-Yulee*, the Supreme Court upheld a Florida Canon of Judicial Conduct

21 that prohibits the personal solicitation of campaign contributions by judges and judicial

22 candidates, finding that it does not violate the First Amendment. The prohibition was challenged

23 on the grounds that it violated a judicial candidate's right to free speech as it did not permit her to

24 directly solicit funds for re-election or to ask attorneys for public statements of support. *Williams-*

25 *Yulee,* 75 U.S. at 443-444. These restrictions infringed on her freedom to discuss herself and her

26 qualifications to be a judge. *Id.* In reaching this determination the Court applied a strict scrutiny

27 analysis following prior precedent reviewing speech restrictions on a candidate for judicial office

28 because the speech was about public issues and the qualifications of candidates for elected office

1   which deserved the highest level of First Amendment Protection. *Id.* at 443. The Court concluded

2   that the regulation passed even the most heightened scrutiny because it was narrowly tailored to

3   protect the state's compelling interest of protecting judicial integrity, and maintaining the public's

4   confidence in an impartial judiciary. The Court held that the cannon only restricted "a narrow

5   slice of speech" and the candidate had other options to solicit campaign funds and obtaining

6   letters of support from attorneys (both through the use of a campaign committee). *Id.* at 452. In

7   addition, she was free to speak with anyone on any issue, make speeches, write letters, appear on

8   radio and television, and could contact supporters in person, on the phone, or online. She was

9   only prohibited from asking for money and for public letters of support from attorneys. *Id.*

10         The facts of the case at bar are strikingly similar to the basic facts in *Williams-Yulee* – the

11   restrictions only limit a very small slice of speech (solicitation of donations). And the state has an

12   important and compelling interest in protecting the public perception of the integrity of local

13   agencies and that such agencies are free from political corruption. Given the striking similarities

14   to the restrictions at issue, the guidance and analysis provided in *Williams-Yulee* strongly supports

15   a finding, even if the strict scrutiny were applied, that the states closely drawn interest justifies the

16   limited restrictions imposed on Plaintiffs.

17         As demonstrated by the cases cited above, California has an important interest, even a

18   compelling interest, that is closely tied to the prohibitions set forth in Section 3205. The

19   limitations on the speech imposed by Section 3205 are slight, and closely drawn so to limit only

20   direct solicitations from colleagues as not to impact other areas of political activity. The State

21   wants to ensure that local agencies operate efficiently and fairly and the workplace remains free

22   from corruption, the appearance of corruption, and undue influence to donate to partisan political

23   campaigns. These important and compelling interests have been found sufficient by the U.S.

24   Supreme Court, and by numerous state and federal courts throughout the country uphold much

25   broader restrictions than those set forth in Section 3205. Given these holdings, Plaintiffs cannot

26   satisfy their "doubly demanding" burden of "establishing that the law and facts *clearly favor*

27   [their] position.'" *Garcia,* 786 F.3d at 740.

28

12

1

2

**B.      Plaintiffs Cannot Demonstrate that they are Clearly Likely to Prevail on their Claim that Section 3205 Violates the Equal Protection Clause**

Plaintiffs' also assert that Section 3205 violates the Equal Protection Clause because the state regulates the political activity of its state employees in a manner different from that used to regulate political conduct of county, city, and local employees. Without analysis, Plaintiffs conclude that state employees on the one hand and employees of counties, cities, and other local agencies on the other hand, are similarly situated as political speakers. They then leap to the conclusion that "courts have uniformly struck down laws like Section 3205 that impermissibly discriminate among speakers and speech." Plaintiffs' Opening Brief, 11:21-22. Despite this bold assertion, Plaintiffs do not point to one case where courts have struck down a law like Section 3205 that imposes an extremely narrow slice of speech by prohibiting solicitation of political donations from fellow employees, on Equal Protection or First Amendment grounds.

As the *Broadrick* court recognized when it rejected an equal protection challenge to more onerous political restrictions that applied to classified state employees but not unclassified state employees, "the legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated. See *McGowan v. Maryland,* 366 U.S. 420 (1961)." *Broadrick,* 413 U.S. at 607-608, fn. 5. California "can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." *Id.*

Plaintiffs' assertion that Section 3205 violates the Equal Protection Clause fails because Plaintiffs cannot establish that State employees and the employees subject to Section 3205 are similarly situated for purposes of regulating campaign solicitations among public employees. Plaintiffs themselves acknowledge that state employees are subject to extensive regulations, ethical guidelines and codes of conduct. See, Plaintiffs' Opening Brief 13:25-14:12. As Plaintiffs point out the legislature provides "ample rulemaking authority to *state agencies* to adopt sensible rules." Plaintiffs' Opening Brief 14:3-4. The State has chosen to allow state agencies to craft an extensive set of rules to guide the conduct of state employees. The fact that the Legislature has

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

1  not enacted additional legislation demonstrates confidence that the existing state rules are

2  sufficient to prevent corruption at the state level.

3     Rather than attempt to regulate all political workplace conduct at the local level, the State

4  has chosen to issue a state-wide restriction, Section 3205, that applies to very limited conduct that

5  is not otherwise uniformly regulated throughout the state.

6     As explained previously, the state has an important, and even compelling interest in

7  regulating the conduct of civil service employees within the state to ensure there is no corruption

8  or appearance of corruption, and that highly qualified workers seek and maintain employment in

9  civil service and are free of political coercion and partisan pressure to donate to political causes.

10  The First Amendment does not "put [the state] in that all-or-nothing choice", nor does it "punish

11  [the state] for leaving open more, rather than fewer, avenues or expression, especially when there

12  is no indication that the restriction of speech reflects a pretextual motive." *Williams Yulee v. Fla.*

13  *Bar,* 575 U.S. 433 (2015). The fact that California has regulated partisan political activities within

14  state civil service differently from how it regulates partisan political activities within county, city

15  and local agency civil service does not lead to the conclusion that one or both of the restrictions

16  run afoul of the Equal Protection Clause.

17     In support of its Equal Protection argument, Plaintiffs rely on *Harwin v. Goleta Water Dist.,*

18  953 F.2d 488 (9th Cir. 1991). Such reliance is misplaced. First, *Harwin* pertained to a city

19  ordinance that attempted to eliminate conflicts of interest created by political donations – it did

20  not attempt to restrict donations or solicitations for donations. The ordinance, however, left an

21  entire category of interested parties and potential conflicts unregulated – i.e., donors who oppose

22  approving applications for waivers from the moratorium on water connections. On that basis, the

23  Court found that the city's interest in curbing corruption was justified, but the ordinance was

24  discriminatory because it left open a significant opportunity for corruption. Unlike the facts in

25  *Harrow*, in the case at bar, Plaintiffs have not identified any significant discriminatory

26  opportunity for corruption – both state and local agency employees are regulated to prevent

27  corruption and the appearance of corruption. Further, as explained above, the state has chosen to

28  utilize different regulatory schemes to regulate conduct to prevent corruption and the appearance

14

1  of corruption and remove the undue pressure that can be asserted by soliciting donations from

2  colleagues in state and local agencies.

3       Plaintiffs reliance on *Fangman* to support its claim that Section 3205 violates the Equal

4  Protection Clause is also misplaced. As previously explained, *Fangman* supports the conclusion

5  that Section 3205 survives Plaintiffs' constitutional challenges. In *Fangman* the city charter

6  provisions struck were unconstitutional because they were overbraod not because they violated

7  the Equal Protection Clause. Plaintiffs do not challenge Section 3205 as being overbraod, because

8  they cannot - Section 3205 contains a very narrow restriction on the solicitation of political

9  donations that is supported by an important state interest.

10      Similarly, the other cases relied on by Plaintiffs to support their claim that Section 3205

11  violate the Equal Protection Clause are easily distinguishable from the facts of the case at bar.

12  They neither pertain to similar restrictions on speech, nor to similar claims of Equal Protection. In

13  *Riddle v. Hickenlooper*, 742 F.3d 922 (10th Cir. 2014), the 10th Circuit Court did strike down the

14  statue in question because it violated the Equal Protection Clause, but the statue in question set

15  campaign contribution limits much lower for independent and small party candidates than those

16  of major party candidates. The language of the statute itself regulated similar situated donors and

17  candidates and provided discriminatory treatment that favored large party candidates and their

18  donors. This is nothing like the statue in question here, or the equal protection violation Plaintiffs

19  assert. Similarly, *Russel v. Burris,* 146 F.3d 563, 571-72 (8th Cir. 1998) is inapplicable because it

20  also pertains to differing political contribution limits and the justification for the different limits

21  in the statute were not supported by a compelling state interest in establishing different

22  contribution levels.

23      Given the state's important interest in regulating the conduct proscribed by Section 3205

24  and the fact that the prohibition is quite limited and closely drawn to avoid unnecessary

25  infringement of First Amendment rights, and that California has chosen different regulatory

26  frameworks for state employees and local agency employees with respect to solicitation of

27  campaign donations from co-workers does not violate the Equal Protection Clause.

28

**C.**     **The Remaining Equitable Factors Weigh Heavily Against Issuance of a Temporary Restraining Order**

If, as here, "a movant fails to establish likelihood of success on the merits," a court "need not consider the other factors" to deny a preliminary injunction. *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020). Given Plaintiffs' inability to demonstrate it will clearly prevail on the merits of constitutional challenges Section 3205, this Court need not consider the remaining equitable factors for determine whether to issue a TRO. Nevertheless, as explained below,  a review of the remaining factors —irreparable harm, equity balancing, and public interest— do not support Plaintiffs' request for the issuance of a TRO.

**1.**     **Plaintiffs have not, and will not, suffer irreparable harm**

At the outset it should be noted that the Political Club has not established that is has or will suffer any harm as result of Section 3205. In addition, it appears that more than half of the club, some 32 current members are able to solicit donations from the Santa Clara County Public Defender's Office. As set forth in the Declaration of Claire Ware, the club has 56 members (Ware Decl., ¶5), 24 of these members are Santa Clara County Public Defenders (Ware Decl., ¶6). That leaves 32 members who are not employed by the Santa Clara County Public Defender's office, all of whom are free to solicit donations from the Santa Clara County Public Defender's office and other county employees.

While Section 3205 can and does apply to some of the Political Club's members, notably Plaintiffs Ware and Henneman, they are not irreparably injured. First, the restriction on their speech, as explained above, is permissible restriction that serves an important state interest. In addition, Section 3205, has an exception to its stated prohibition that allows county, city and local agency employees to solicit political donations from their colleagues "if the solicitation is part of a solicitation made to a significant segment of the public which may include officers or employees of that local agency." Cal. Govt. Code § 3205 (c). One example of this was provided to Plaintiffs in the memo that the County of Santa Clara circulated to its employees in or around August 11, 2020. (Ware Decl., ¶17.) A county employee running for office could broadly solicit campaign contributions from Santa Clara University Alumni, even if some of the Alumni were

16

county officers or employees. *Id.* Thus, even Plaintiffs Ware and Henneman would have the opportunity to circulate broad solicitation for campaign contributions that could encompass all of the county employees they would like to solicit campaign contributions from. Additionally, they can solicit contributions from individuals who are not county employees.

### 2. The balance of equities and the public interest favor denial of the requested temporary restraining order

The balance of equities and public interest both support a denial of Plaintiffs' request for a TRO. Where a government entity is the defendant, the two factors merge, and courts ask what public consequences would accrue from injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The relief Plaintiffs seek would not be equitable. If the requested injunction were to issue the state would be irreparable harmed because the Santa Clara County Public Defender's Office will be susceptible to corruption, the potential for corruption, and disruption in the workplace. If the injunction were to issue there would be little to stop the employees from the thousands of other local agencies from requesting similar injunctions –thus opening up all of those agencies to corruption, the potential for corruption, and disruption in the workplace.

As to the public interest, Plaintiffs assert that "courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." Opening Brief, 20:6-8 (citation omitted). But that assertion does not resolve the question on Plaintiffs' TRO application. "[P]roving a likelihood of success on their First Amendment claim, alone, does not satisfy the balance of hardships and public interest requirements for an injunction …" *Gresham v. Picker*, 705 F. App'x 554, 557 (9th Cir. 2017) (emphasis added). And Plaintiffs have not even established a likelihood of success.

This same reasoning explaining that the equities favor a denial of the request to issue a TRO also demonstrates that the TRO sought by Plaintiffs would not be in the public interest. The public is entitled to, and expects, that campaign fundraising rules would be applied evenly for all candidates. Public faith in fair elections would be further eroded if individuals and partisan clubs like Plaintiffs are permitted to obtain emergency orders giving them, and their candidates,

1   different fundraising rules shortly before an upcoming election. An additional factor is that the

2   Santa Clara County District Attorney is charged with enforcing Section 3205 — as such, the DA

3   certainly has an interest in enforcing statutes that protect the integrity of county agencies. Given

4   this interest, it seems that absent the participation of the DA in this process, the TRO should not

5   issue given the impact it will have on the County of Santa Clara.

6          Furthermore, the balance of the equities and public interest clearly favor the State and

7   weigh against injunctive relief. Giving effect to the will of the people by enforcing the laws they

8   and their representatives enact serves the public interest. *See Thompson v. Dewine*, 959 F.3d 804,

9   at 812 (6th Cir. 2020).

10         Plaintiffs fail to show that they will suffer irreparable harm, that the balance of equities

11  weighs in their favor, or that it is in the public interest to permit them to solicit political donations

12  from their fellow county employees. For these reasons this Court should deny the requested

13  Temporary Restraining Order. *Winter*, 555 U.S. at 20; *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d

14  1073, 1092 (9th Cir. 2014).

15                                    **CONCLUSION**

16         For the reasons provided above, Plaintiffs' motion for a temporary restraining order and for

17  the issuance of an order to show cause should be denied.

18

19  Dated:  June 11, 2021                          Respectfully Submitted,

20                                                 ROB BONTA
                                                   Attorney General of California
21                                                 MARK BECKINGTON
                                                   Supervising Deputy Attorney General
22

23

24                                                  /s/ Keith L. Wurster
                                                   KEITH L. WURSTER
25                                                 Deputy Attorney General
                                                   *Attorneys for Defendant Rob Bonta as*
26                                                 *Attorney General for the State of California*

    SA2021302531
27  35173651.docx

28
                                          18