ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
KEITH L. WURSTER
State Bar No. 198918
MILAD DALJU
State Bar No. 271364
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7907
  Fax: (916) 324-8835
  E-mail: Keith.Wurster@doj.ca.gov
*Attorneys for Defendant Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PROGRESSIVE DEMOCRATS FOR SOCIAL JUSTICE, KRISTA HENNEMAN, CARLIE WARE,**<br><br>                              Plaintiffs,<br><br>                  v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>                              Defendants. | 21-cv-3875<br><br>**DEFENDANT ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         December 6, 2021<br>Time:        2:00 P.M.<br>Dept:         2<br>Judge:       The Honorable Haywood S. Gilliam, Jr.<br>Trial Date:  Not Set<br>Action Filed: 5/24/2021 |

# TABLE OF CONTENTS

                                                                                                       **Page**

Preliminary Statement .................................................................................................................. 1

Argument ..................................................................................................................................... 1

      I.      The State Has Demonstrated That Section 3205 Does Not Violate the First Amendment ........................................................................................................ 1

            A.     Plaintiffs Concede That the First Amendment Does Not Bar Regulation of Political Activity by Government Employees ...................... 2

            B.     Under Any Standard Section 3205(a) Passes a First Amendment Constitutional Challenge ............................................................................ 2

                  1.      Under the Applicable Pickering Standard California's Important Interests Outweigh Plaintiffs' Interest in Directly Soliciting Political Contributions from Fellow Employees ............ 3

                  2.      Applying a Heightened Standard of Scrutiny Confirms that California's Important Interests Are Closely Drawn to Section 3205(a)'s Prohibition on Plaintiffs' Solicitation of Partisan Political Contributions from Fellow Employees ............... 5

                  3.      Section 3205(a) Survives Application of Strict Scrutiny Because California Has a Compelling Interest in Preventing Local Government Corruption and Section 3205 Is Narrowly Tailored to Achieve Those Goals .................................. 6

      II.     Section 3205 Does Not Violate the Equal Protection Clause ................................. 7

            A.     The Legislative Record Supports a Finding That California Has a Reasoned Basis for Regulating the Political Activity of Local Area Agency Employees ..................................................................................... 7

            B.     Plaintiffs Have Not, and Cannot Demonstrate That They Are Similarly Situated to State Employees, Thus Their Equal Protection Claim Fails ................................................................................................. 11

            C.     Should the Court Apply an Equal Protection Analysis § 3205(a) Is Sufficiently Justified to Survive Plaintiffs' Equal Protection Challenge .................................................................................................. 13

Conclusion ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Broadrick v. Oklahoma*
　413 U.S. 601 (1973).................................................................................................... *passim*

*F.E.C. v. National Conservative Political Action Committee*
　470 U.S. 480 (1985) ............................................................................................................ 6

*Harwin v. Goleta Water Dist.*
　953 F.2d 488 (9th Cir. 1991)................................................................................... 6, 14, 15

*McCutcheon v. FEC*
　572 U.S. 185 (2014) ............................................................................................................ 6

*McGowan v. Maryland*
　366 U.S. 420 (1961) .......................................................................................................... 13

*Nordlinger v. Hahn*
　505 U.S. 1 (1992) .............................................................................................................. 13

*Phillips v. City of Dallas*
　781 F.3d 772 (5th Cir. 2015)..................................................................................... 3, 4, 5

*Pickering v. Board of Education*
　391 U.S. 563 (1968)..................................................................................................... *passim*

*SEIU v. Fair Political Practices Commission*
　955 F.2d 1312 (9th Cir. 1992)..................................................................................... 14, 15

*United States Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*
　413 U.S. 454 (1973) ..................................................................................................... *passim*

*United States v. Nat'l Treasury Employees Union*
　513 U.S. 454 (1995) ............................................................................................................ 5

*Williams-Yulee v. Fla. Bar*
　575 U.S. 433 (2015)..................................................................................................... 6, 14

*Yamada v. Weaver*
　872 F.Supp.2d 1023 (D. Haw. 2012) ................................................................................. 6

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

California Government Code
    Chapter 9.5 .................................................................................................................. 7, 11
    § 3201 ............................................................................................................................... 11
    § 3201-3209 ..................................................................................................................... 11
    § 3204 ........................................................................................................................... 9, 12
    § 3205 ........................................................................................................................*passim*
    § 3205(a) .....................................................................................................................*passim*
    § 3205(c) ................................................................................................................ 1, 2, 6, 14
    § 3207 ............................................................................................................................... 11
    § 19990 ....................................................................................................................... 11, 12

# PRELIMINARY STATEMENT

The California legislature has an interest in ensuring that public agencies in the state operate efficiently, are free from corruption, the appearance of corruption, and coercion to participate in political activity. This interest is undisputed by Plaintiffs. What Plaintiffs challenge is the application of California Government Code Section 3205(a) ("Section 3205(a)") to only employees of local area agencies. Plaintiffs assert in Plaintiffs' Combined Summary Judgment Reply and Opposition ("Plaintiffs' Opp.") that Section 3205(a)'s failure to also prohibit similar conduct undertaken by state employees is a violation of their rights to equal protection under the Fourteenth Amendment.

Defendant Attorney General Rob Bonta ("Defendant") asserts in Defendant's Motion for Summary Judgment and Combined Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's MSJ") that a long line of cases and the Legislative Record support a finding that California has a compelling state interest to regulate the political conduct of local area agency employees in the manner set forth in Section 3205(a). This interest in preventing corruption, the appearance of corruption, and coercion to participate in partisan politics in local area agencies outweighs Plaintiffs' interest in their rights to seek direct partisan political contributions from co-workers. Section 3205(a) is narrowly tailored to achieve this goal and it limits a minimum amount of conduct—only direct solicitations to fellow employees while permitting more broad solicitations that can include co-workers to achieve its stated purpose through the application of Section 3205(c).

# ARGUMENT

**I.   THE STATE HAS DEMONSTRATED THAT SECTION 3205 DOES NOT VIOLATE THE FIRST AMENDMENT**

Contrary to the assertions in Plaintiffs' Opp., Defendant has demonstrated that Section 3205(a) does not violate the First Amendment. First and foremost, Plaintiffs concede that California may regulate campaign solicitations by government employees consistent with the First Amendment; indeed, Plaintiffs acknowledge that binding precedent supports that the State of

1

1  California has a sufficiently compelling interest that justifies enacting an anti-corruption statute
2  that places restrictions on the ability of state and local employees to solicit political donations
3  from co-workers. *See,* Plaintiffs' Opp. 12:20-13:2. Plaintiffs concession is well-taken. In his MSJ,
4  Defendant amply demonstrates that under the applicable *Pickering* standard Section 3205(a) does
5  not violate Plaintiffs' First Amendment rights to make political solicitations because the State of
6  California has an adequate justification in curbing corruption through the limitations imposed by
7  Section 3205(a). Moreover, even if the Court were to apply heightened scrutiny, as Plaintiffs
8  urge, California's interest is sufficiently important and even compelling, and the restriction
9  imposed by Section 3205(a) is narrowly tailored and even the least restrictive alternative to limit
10 harm potentially caused the political solicitation among government co-workers – especially
11 when viewed in conjunction with the exception provided for by Section 3205(c). For these
12 reasons, as explained more fully below, the Court should find that the Section 3205(a) does not
13 violate Plaintiffs' First Amendment rights to political speech.

      **A.**    **Plaintiffs Concede That the First Amendment Does Not Bar Regulation of Political Activity by Government Employees**

16      Plaintiffs acknowledge a prohibition on government employees soliciting campaign
17 contributions from co-workers passes constitutional muster under the binding precedent of
18 *Broadrick v. Oklahoma,* 413 U.S. 601 (1973) and *United States Civ. Serv. Comm'n v. Nat'l Ass'n*
19 *of Letter Carriers,* 413 U.S. 454 (1973)(*"Letter Carriers"*). Plaintiffs acknowledge "that this case
20 would not have been viable if the law today were still as it was in 1975, when *all* California
21 public employees were subject to identical restrictions." Plaintiffs' Opp. 12:26-13:2 (italics in
22 original). Thus Plaintiffs only challenge to Section 3205(a) is on Equal Protection grounds. This
23 concession is sufficient for the Court to rule in favor of the Defendant on Plaintiffs' First
24 Amendment challenge to the Section 3205(a).

      **B.**    **Under Any Standard Section 3205(a) Passes a First Amendment Constitutional Challenge**

27      As explained in Defendant's MSJ, California's interest in curbing corruption and the
28 appearance of corruption by prohibiting the political solicitations restricted by Section 3205(a), is

an important interest that has been long recognized as a compelling state interest. As summarized below, the modest limitations placed on local area agency employees' rights to solicit political contributions from co-workers is a narrowly tailored restriction that is designed to address the compelling state interests of curbing corruption, the appearance of corruption, and coercion imposed on local area agency employees into making partisan political contributions to colleagues, supervisors, and agency officers. Contrary to Plaintiffs' assertion in their Opposition, no matter what balancing test the court applies to evaluate Section 3205(a), the State's interest is sufficient to justify the restrictions imposed by Section 3205(a).

> **1.   Under the Applicable Pickering Standard California's Important Interests Outweigh Plaintiffs' Interest in Directly Soliciting Political Contributions from Fellow Employees**

As explained in Defendant's MSJ, the applicable standard to evaluate the constitutionality of Section 3205(a) is the *Pickering* test outlined in *Pickering v. Board of Education,* 391 U.S. 563 (1968) and the long line of cases which include *Letter Carriers,* 413 U.S. 548, and *Phillips v. City of Dallas,* 781 F.3d 772 (5th Cir. 2015). Under this standard California's interest in enacting Section 3205 outweighs Plaintiffs' interest in directly soliciting partisan political contributions from co-workers. Plaintiffs do not dispute this conclusion.

Rather than analyzing Section 3205(a) under this standard Plaintiffs argue that the *Pickering* test does not and cannot apply. Their assertion in this regard is based on two unsupported positions that Plaintiffs take with regard to the application of *Pickering* and its progeny—first, that Section 3205's inclusion of a criminal liability provision prohibits the application of the *Pickering* test; and, second, that the *Pickering* test is inapplicable because Section 2305 is an *ex ante* restriction. Neither argument prevents the *Pickering* test from applying in this matter.

First, Plaintiffs assert that because Section 3205 includes criminal liability and the *Pickering* test has never been applied to cases that involved criminal liability, the *Pickering* analysis cannot be used. Plaintiffs provide no relevant or applicable legal authority for this conclusion. Rather than provide legal support for their argument, Plaintiffs assert that since

1  Defendant has not pointed to any case where the *Pickering t*est was applied to a statute that
2  included criminal liability the *Pickering* test cannot be applied here.
3      Defendant asserted in his MSJ that *Broadrick* applied the *Pickering* test when analyzing a
4  similar set of facts when reviewing Oklahoma's version of the Hatch Act. Plaintiffs argue in their
5  Opposition that *Broadrick* does not apply the *Pickering* test and that *Broadrick* does not rely on
6  the *Pickering* line of cases in its decision.  While it is true that *Broadrick* only references
7  *Pickering* in the footnote referenced by Plaintiffs, *Broadrick* does rely heavily on the findings and
8  holding in *Letter Carriers*. *Broadrick,* 413 U.S. at 616-617. *Letter Carriers* relied on *Pickering*
9  when it held that the government has an interest in regulating the conduct and the speech of
10 government employees and in doing so it must balance the interests of the employee in speaking
11 on matters of public concern versus the government's interest in promoting the efficiency of the
12 public services it provides. *Letter Carriers,* 413 U.S. at 564. So while *Broadrick* does not
13 specifically rely on or apply the *Pickering* test, its reasoning is based on *Pickering* and it is
14 instructive on how to balance and evaluate restrictions placed on political activity of government
15 employees. In sum, Plaintiffs' position is that since Defendants have not cited to case where the
16 *Pickering* test was applied to case involving a criminal sanction, this Court cannot do so here.
17 There, however, is nothing in *Pickering* or any of progeny that suggests the State could not
18 impose criminal liability as one of its tools to combat corruption. For these reasons Plaintiffs'
19 argument fails because they have not demonstrated that the Court cannot, or should, not apply the
20 *Pickering* test when a statute includes criminal liability.
21     Second, they assert that the *Pickering* test is only applied in *ex post*, that is retroactively
22 after the events have taken place, termination decisions, not in cases imposing *ex ante* restrictions,
23 restrictions placed on actions before the actual events take place, like those set forth in Section
24 3205(a). Plaintiffs argument and conclusions regarding the *ex ante* and *ex post* distinction ignore
25 the facts and are not supported by relevant case law. Plaintiffs' argument also fails to address or
26 take into account the *Phillips* decision. *Phillips* involved judicial review of a city charter that
27 prohibited city employees from seeking elected office in any County in which the City of Dallas
28 was located—a prohibition that was in place before any action was taken against the Plaintiff, i.e.,

4

*ex ante*. In *Phillips* the Court reviewed the line of *Pickering* and *Hatch Act* cases, including *Letter Carriers* and *Broadrick,* and applied the *Pickering* test to the city regulation and found that the government had an important interest in "fair and effective operation of the … government [that] justifies regulation of partisan political activities of government employees." *Phillips,* 781 F.3d 772, 783. The Court upheld the city charter's provisions as constitutional and affirmed the district court's dismissal of Plaintiff's challenge to the city charter.

Plaintiffs have provided no relevant authority or argument to alter the conclusions set forth in Defendant's MSJ that the Court should apply the *Pickering* test and find that California's significant interest in combatting corruption, the appearance of corruption, and coercion on local area agency employees to make partisan political donations outweighs Plaintiffs' interest to directly solicit partisan political contributions from co-workers.

### 2. Applying a Heightened Standard of Scrutiny Confirms that California's Important Interests Are Closely Drawn to Section 3205(a)'s Prohibition on Plaintiffs' Solicitation of Partisan Political Contributions from Fellow Employees

Contrary to Plaintiffs' assertion in their Opposition, Defendant presented argument and compelling evidence that Section 3205 does not violate Plaintiffs' First Amendment Rights to free speech even under heightened scrutiny.

Plaintiffs assert that the decision of *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995) ("*NTEU*") requires that this Court apply a heightened level of scrutiny because this matter involves a restriction on expression rather than an isolated disciplinary action. See, Plaintiffs' Opp. at 8:3-20. As previously explained by Defendant, *NTEU* is readily distinguishable. See, Defendant's MSJ, at 13:25-15:8. Plaintiffs' discussion of *NTEU* fails to demonstrate that it is applicable to the facts before this court, and the fact that it is a later decision has no bearing on *Pickering*'s clear application. *Id*.

But even if the Court were to apply a heightened level of scrutiny like that used in *NTEU*, California has a legitimate concern about corruption, the appearance of corruption, and preventing coercion of local area agency employees. Such concerns have been recognized in a long line of cases as an important state interests. See, *Letter Carriers,* 413 U.S. 310 (1973),

*Broadrick,* 413 U.S. 601 (1973)*, Harwin v. Goleta Water Dist.,* 953 F.2d 488 (9th Cir. 1991), and *McCutcheon v. FEC,* 572 U.S. 185, 199 (2014) (finding that the goal of limiting corruption or the appearance of corruption is sufficiently important interest and even a sufficiently compelling interest to satisfy strict scrutiny for narrowly tailored restrictions on First Amendment Rights); see also, Defendant's MSJ at 15:9-16:25. Section 3205(a) is closely drawn to California's important governmental interest because the prohibition on solicitation of partisan political donations from co-workers implicates those very interests of corruption, the appearance of corruption and concerns about coercion on local agency area employees to donate to a partisan political cause or candidate. The prohibition also avoids unnecessary abridgement of Plaintiffs' interests.  In particular, the prohibition includes an exception that permits solicitations to fellow employees if it is part of a larger solicitation that goes beyond fellow employees. See, Cal. Govt. Code § 3205(c). The restriction is limited only to cover conduct that can lead to corruption, the appearance of corruption, and coercion to donate to a political cause or candidate. Thus, Section 3205(a) survives even an intermediate level of scrutiny challenge.

   **3. Section 3205(a) Survives Application of Strict Scrutiny Because California Has a Compelling Interest in Preventing Local Government Corruption and Section 3205 Is Narrowly Tailored to Achieve Those Goals**

Plaintiffs also urge in their Opposition that strict scrutiny should apply. As explained in Defendant's MSJ, while *Williams-Yulee v. Fla. Bar,* 575 U.S. 433 (2015) is distinguishable from the case at bar, its reasoning and analysis regarding the application of strict scrutiny is instructive given some strong similarities between the general framework of the facts. See, Defendant's MSJ at 16:26-17:24.

Much like in *Williams-Yulee,* here California has a compelling state interest in combatting corruption, the appearance of corruption, and coercion. *Id.* It is well settled and beyond reasonable dispute that combatting corruption or the appearance of corruption is a compelling state interest. *See*, *McCutcheon,* 572 U.S. at 199; *F.E.C. v. National Conservative Political Action Committee,* 470 U.S. 480, 496-497 (1985); *Yamada v. Weaver,* 872 F.Supp.2d 1023, 1040 (D. Haw. 2012). And like in *Williams-Yulee* the restrictions imposed on Plaintiffs here are narrowly

6

1  tailored to address these interests, while leaving open a wide range of political activity and other
2  avenues to solicit donations from co-workers that do not lend themselves to corruption or the
3  appearance of corruption—i.e., larger public appeals for partisan political donations that can
4  include coworkers. Given *Pickering* there can be little doubt that California may restrict intra-
5  agency campaign solicitations by government employees without further tailoring.

6  Thus, even if strict scrutiny were applied to the First Amendment analysis, California's
7  compelling state interest in combating corruption, the appearance of corruption, and coercion
8  justifies the narrowly tailored restriction on Plaintiffs' ability to directly solicit partisan political
9  donations from co-workers.

## II. SECTION 3205 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE

In their Opposition, Plaintiffs acknowledge that the real focus of their challenge to Section 3205 is their claim that it violates the Equal Protection Clause. See, Plaintiffs' Opp. at 12:25-13:6. Plaintiffs assert that Defendant cannot demonstrate that California has an interest in treating local agency area employees differently from state employees—particularly for the purposes of Section 3205. As previously discussed, the state has an interest, long recognized by the Courts, in ensuring that the speech and activities of its public employees do not interfere with government operations by promoting corruption, the appearance of corruption, or coercion. The legislative record also supports that the state has an interest in treating local agency area employees differently than state employees with respect to partisan political solicitations.

### A. The Legislative Record Supports a Finding That California Has a Reasoned Basis for Regulating the Political Activity of Local Area Agency Employees

As a preliminary matter, it must be stated that Plaintiffs summary of the facts and the record is misleading and inaccurate. Plaintiffs assert that there is no evidence in the legislative history to justify treating state employees differently from local agency area employees for the purposes of Section 3205. Plaintiffs assert, without factual support, that Section 3205 was amended to apply only to local agency area employees as the result of "political favoritism". Plaintiffs' Opp. at 3:20-25. Plaintiffs ignore that the amendments made in 1976 to the statutory framework of Chapter 9.5 of the Government Code, which includes Section 3205(a), were made to limit the

7

number of restrictions imposed on the political activity of public employees. See, Legislative Facts, ECF 46-1, p. 42-43.

Plaintiffs characterize the legislative history as one that demonstrates that the State did not have an interest in treating state employees differently from local agency area employees with particular respect to Section 3205(a)'s limitation on campaign contribution solicitations by co-workers. In support of this position, Plaintiffs' treat the serious concerns were raised by the City of Sacramento, which were subsequently withdrawn, as evidence of this "political favoritism," rather than a legitimate reason to treat the two distinct categories of public employees differently. A review of the objections raised and the subsequent amendments made demonstrate that the issue the City of Sacramento (and the City of Los Angeles) had with the total repeal of the solicitation provision was that it would no longer apply to local area agency employees—thus they were still concerned about corruption and the appearance of corruption due to political influence in local area agencies. See, Legislative Facts, ECF 46-1, p. 58 (Jul 15, 1976 Letter from City of Sacramento to Chairman of Senate Governmental Organization Committee). The record reveals that shortly after receiving this letter the Bill was amended to re-enact the solicitation provision to apply to local agency area employees. See, Legislative Facts, ECF 46-1, pp. 51-53 (Senate Committee on Government Organization's Staff Analysis of AB No. 4351 after the August 11 Amendment which reenacted the direct solicitation ban for local agency area employees).

California's State Personnel Board also modified its initial assessment of AB 4351, deciding that it would not testify to oppose AB 4351. Compare, Legislative Facts, ECF 46-1, pp. 56, 70-71, and 77. The State Personnel Board found that state employees in federally funded positions were subject to the Federal Hatch which prohibited among other things "encouraging another employee to make a political contribution" and if AB 4531 became law, those prohibitions would continue to be in place. See, Legislative Facts, ECF 46-1, p. 70-71. In addition, the bill prohibited a person, employed by the state or a local area agency, from using their influence to affect an individual's nomination or confirmation—this provision was understood to prohibit "using one's influence to obtain political contributions" as such activity

"would be interpreted as unlawful." *Id.* The referenced provision was enacted as part of AB 4531 and it became California Government Code Section 3204.

This record demonstrates that the Legislature considered the distinction between state and local agency area employees and saw a specific need to continue prohibiting the direct solicitation of partisan political contributions to coworkers and other employees of local agency area employees because there were still concerns about corruption, the appearance of corruption, and an impact on some operations in local area agencies. All of these factors are part of the legislative record, and the legislature considered these and passed the amended version of AB 4351.

Plaintiffs also reference the concerns raised by The Director of the Office of Employee Relations, Marty Morgenstern, and California's Business and Transportation Agency as evidence that if enacted, Section 3205 would lead to an unreasoned and unaddressed disparate treatment of local agency area employees. Plaintiffs' Opp. at 3:13-4:10. But these private objections were raised to the Governor, not to the Legislature, and are in no way indicative of legislative intent or dispositive on the question of disparate treatment. A closer review of these objections, and other contents of the record not cited by Plaintiffs, actually reveal that the distinction in treatment was considered, and the legislature saw a need, as did the Governor, to enact Section 3205.

As to the concerns raised by Mr. Morgenstern, on September 22, 1976 he recommended that Governor not sign the bill "at least until we could determine the rationale for this distinction." The distinction referenced is AB 4351's bar on local agency area employees from directly soliciting political funds from other agency area employees but not barring state employees from the same conduct. Eight days later the California Governor signed AB 4351 creating Section 3205. Plaintiffs conclude the signing of the bill was without reason and that distinction made between state and local area agency employees was not addressed. But the record reveals that local area agencies were concerned about not having the solicitation ban on their local agency area employees. See, Legislative Facts, ECF 46-1, p. 58 and 76 (objections raised by the Cities of Sacramento and Los Angeles.) These concerns lead to amendments to the bill that re-enacted the solicitation ban for local area agencies. See, Legislative Facts, ECF 46-1, p. 51-53. The objections raised by the City of Los Angeles to the enactment of AB 4351 in its September 8, 1976 letter to

the Governor, were centered on the removal of the solicitation ban on local agency area employees. The version of the bill signed by the Governor included the revisions that re-enacted the solicitation ban on local area agencies. Thus, the Legislature had addressed the concerns and objections raised in the Letter sent by the City of Los Angeles to the Governor, and the Governor signed into law the amended version of the bill that included the provision that the City of Los Angeles was concerned about removing.

Plaintiffs fail to recognize or address the legislative history related to the amendments made to Section 3205 in 1995. As cited in Defendant's MSJ, in 1995 the Legislature amended Section 3205(a), and one of the concerns regarding the statute, which applied only to local area agency employees, was a concern that neither such "employees nor officers should be coerced into contributions for fear that employment may in jeopardy if they do not contribute." See, Defendant's MSJ at 4:9-13 citing to Cal. Bill Analysis, S.B. 1308, 1995-1996 Session (July 12, 1995). The concern about coercion was for the potential coercion of local area agency employees, the only employees and officers covered by Section 3205(a) at the time. If the Legislature had concerns that this was an issue for state employees, it had the opportunity to modify the statue to include coverage for state employees—or to enact other legislation to address such a concern. The Legislature did not do either. Thus the discussion of this concern about coercion in this context only applies to local area agency employees which demonstrates that California had an important state interest in enacting legislation that restricted local area agency employees from making political solicitations to the coworkers.

There is sufficient evidence in the record to demonstrate that Legislature (and in fact the Governor) was aware that AB 4531 would re-enact the ban on direct solicitation from co-employees only for local area agencies. Removing this ban for local area agencies was still clearly a concern for a number of local area agencies (the Cities of Sacramento and Los Angeles)—thus AB 4531 was amended in 1976 to re-enact these provisions for the local area agencies. Section 3205 was amended again in 1995 and the Legislature was specifically concerned with coercion against local agency area employees to contribute to partisan political campaigns. Thus, there is sufficient evidence in the legislative record to demonstrate that

California had a reasoned basis for repealing the prior version of section 3205 and enacting a version of 3205 that only applied to local area agency employees.

**B.    Plaintiffs Have Not, and Cannot Demonstrate That They Are Similarly Situated to State Employees, Thus Their Equal Protection Claim Fails**

Local agency area employees, like Plaintiffs, are not similarly situated to state employees for the purposes of Section 3205. See, Defendant's MSJ at 19:6-20:16. In sum, state employees have a well regulated civil service framework to ensure fair employment practices, training, retention, promotion, and advancement that are free from the influences of corruption, the appearance of corruption, and coercion. This is accomplished largely through the application of California Government Code Section 19990, which provides limitations and restrictions on activities that are incompatible with employment by the state and the relevant agency, and a collective bargaining process managed by CalHR, who also provides guidance to state agencies to ensure employees civil rights are protected. See, Defendant's MSJ at 19:12-23; Stipulated Fact Nos. 27-28 (ECF 43-2, pp. 5-6). Other than Section 3205, and the other provisions found in Chapter 9.5 of the California Government Code covering Political Activities of Public Employees (which includes Government Code Sections 3201-3209), there are no uniform regulations on the conduct of political activity by local agency area employees to prevent corruption, the appearance of corruption. See, Govt. Code §§ 3201 and 3207.

Plaintiffs attempt to support their conclusion that state and local area employees are similarly situated with respect to public corruption by asserting that there is no relevant distinction between the two groups and that the anti-corruption concerns are indistinguishable. But as the legislative history demonstrates, as previously discussed by Defendant, there is evidence that there were different concerns regarding corruption, the perception of corruption, and coercion as between the two groups. Such evidence includes the concerns raised by local area agencies (the Cities of Los Angeles and Sacramento) that absent some ban on political activity, their employees would be subject to corruption, the appearance of corruption, and coercion to support partisan political issues or candidates. While there was some opposition to the removal of the prior restrictions on certain political conduct of state employees, AB 4531 maintained what is

now, Government Code Section 3204 which prohibits state and local agency area employees from using their office to coerce a vote, exercise political influence, or influence political action in another person. See, Govt. Code § 3204. The State Board of Personnel viewed this provision as a prohibition "using one's influence to obtain political contributions" as such activity "would be interpreted as unlawful." See, Legislative Facts, ECF 46-1, pp. 70-71. The State Personnel Board also found that state employees in federally funded positions were subject to the Federal Hatch which prohibited among other things "encouraging another employee to make a political contribution" and if AB 4531 became law, those prohibitions would continue to be in place. Id.

There are also number of differences between state and local agency area employees that Plaintiffs mischaracterize, discount, or ignore. Plaintiffs assert that state employees have decentralized rules because Government Code Section 19990 ("Section 19990") permits state agencies to craft their own rules about conduct that is incompatible with their mission and with continued employment by that agency.[1] What Plaintiffs miss is the fact that under Section 19990, those rule must be submitted to and approved by CalHR before they can take effect. See, Cal. Gov't. Code § 19990. This mechanism ensures some level of uniformity and permits CalHR to ensure that should any unequal treatment of state employees be proposed it will need to be justified to protect those employees' civil and constitutional rights. There is no such mechanism or any chance of uniformity for the local area agencies—which total at least 3,434 in number. See, Fact Nos. 15-17. Without the basic limitations and uniformity provided by Section 3205 each local area agency will be forced to adopt their own rules to address the state's interest in combatting corruption, the appearance of corruption, and coercion, and it is certainly likely that different rules will be adopted that will lead to disparate treatment of public employees by the local area agencies.

---

[1] Plaintiffs also mischaracterize the Stipulated Facts about Section 19990, when they state that no California agency has ever interpreted Section 19990 to prohibit personal solicitations on the ground that such solicitation is incompatible with employment by that agency. What the stipulated fact says is that Defendant has not located any instance of discipline, threats of criminal prosecution since January 1996 of any state employee for making a political solicitation. See, Fact No. 29. This statement of undisputed fact was made with the limitation that the Defendant does not supervise or oversee discipline or management of state employees.

### C. Should the Court Apply an Equal Protection Analysis § 3205(a) Is Sufficiently Justified and Does Not Violate the Equal Protection Clause

Plaintiffs assert that the standards for evaluating Plaintiffs' First Amendment and Equal Protection claims are substantially identical. Plaintiffs' Opp. at 9:15-16. The standards, however, that Plaintiffs rely on—such as those set forth in *NTEU* and *McCutcheon*—are not applicable to analyze Plaintiffs' challenge to Section 3205. "The Court has held that the Fourteenth Amendment permits the State a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *Id.*

The California Legislature enacted Section 3205 to accomplish the important goal of preventing local corruption. Deference should be given to the Legislature's choice in how to regulate the political conduct to promote its interests. *McGowan*, 366 U.S. at 426 ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.") The mere fact that Plaintiffs can point to differential treatment as between them and state employees does not invalidate Section 3205 on Constitutional grounds. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("Legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.")

As explained in the previous section, the State had numerous reasons to treat state employees differently from local area agency employees. The legislative record reveals that the state desired to limit the restrictions imposed on public employees to ensure that they could exercise more political freedom without unnecessary constraints on their political activity. Courts have long recognized that State could place restrictions on the political activity of public employees. See, *Letter Carriers*, 413 U.S. at 556; *Broadrick*, 413 U.S. at 604-605.

California's stated interest as set forth above and in Defendant's MSJ is sufficiently related to the limitations imposed by Section 3205(a) on local area agency employees. Indeed, upon close examination of the record and the relevant case law, as described extensively above, California has a compelling state interest in addressing the concerns raised in 1976 about maintaining

restrictions on the political activity of local area agency employees to prevent corruption, the appearance of corruption, and coercion on local area agency employees to participate in partisan politics. The limitations imposed by Section 3205(a) are narrowly tailored to limit only a small portion of Plaintiffs' rights, those to directly solicit partisan political contributions from their co-workers. The Legislature took care to ensure the limitation was minimal, as is evidenced by the fact that Plaintiffs are permitted to solicit partisan political donations from their colleagues as long as such solicitations are part of a wider public appeal. See, Cal. Gov. Code § 3205(c).

Analyzing these facts using the reasoning in *Williams-Yulee* demonstrates that Section 3205(a) can pass strict scrutiny, even as to Plaintiffs' Equal Protection Claim. Despite Plaintiffs' assertions that the Court should disregard the reasoning and discussion in *Williams-Yulee* because it is not an equal protection case, this position is contrary to Plaintiffs own admission that the standards that apply to the First Amendment analysis are equally applicable to the analysis of the Equal Protection Claim. The Court should also disregard Plaintiffs' contention that *Williams-Yulee* and its discussion regarding overinclusive and underinclusive speech restrictions. Plaintiffs base this assertion on the fact that *Williams-Yulee* was analyzing the types of speech restricted as opposed to the speaker because it is similarly unavailing – the reasoning is sound and it can be applied in the equal protection context.

Such reasoning is also quite similar to the reasoning applied in *Broadrick,* which did review and reject an equal protection challenge by applying an intermediate level of scrutiny as to the application of far more onerous restrictions to classified state employees but not to unclassified state employees. As *Broadrick* recognized, "the legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated." *Broadrick,* 413 U.S. at 607-608, fn. 5. California "can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." *Id.* This is particularly relevant when one considers that the stated purpose of AB 4351 was to limit the restrictions placed on political activities of public employees to allow California "correct the [] inequities suffered by [its] employees." See, Legislative Facts, ECF 46-1, p. 50.

Finally, as to Plaintiffs' contention that the reasoning and holdings of *Harwin* and *SEIU v. Fair Political Practices Commission,* 955 F.2d 1312 (9th Cir. 1992) should apply and lead the court to conclude that Section 3205 violates the Equal Protection Clause. Both *Harwin* and *SEIU* are quite different from the facts of this case. *Harwin* involved an equal protection challenge to an ordinance that prohibited review of waivers for water connection charges by a board member if they received a contribution of more than $250 from an applicant seeking approval, but review was permitted where those opposing the application made a contribution of more than $250 to the board member. The interest in curbing corruption was not closely tied to the ordinance's different treatment of the campaign contributions. Similarly, *SEIU* is the review of discriminatory campaign contribution limits that did not serve the stated interest of curbing corruption. Neither of these apply and utilizing the much more analogous framework found and holding in *Broadrick* is more appropriate.

## CONCLUSION

For the reasons provided in Defendant's MSJ and those discussed above, Defendant respectfully requests that the Court grant Defendant's Cross-Motion for Summary Judgment.

Dated:  December 6, 2021                             Respectfully submitted,

                                                                                                                                                                           ROB BONTA
                                                                                                                                                                          Attorney General of California
    MARK R. BECKINGTON
    Supervising Deputy Attorney General
    MILAD DALJU
    Deputy Attorney General

    /s/ *Keith L. Wurster*
    KEITH L. WURSTER
    Deputy Attorney General
    *Attorneys for Defendant Rob Bonta*

SA2021302531
PD Reply (mb) - FORMATTED(klw)

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Progressive Democrats for Social Justice, et al. v. Rob Bonta** | No. | **21-cv-3875** |

I hereby certify that on <u>December 6, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 6, 2021</u>, at Sacramento, California.

| | |
|---|---|
| Lindsey Cannan | /s/ *Lindsey Cannan* |
| Declarant | Signature |

SA2021302531
35716631